## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| S.S., | No. 4:22-CV-01407 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| WOODWARD PENNSYLVANIA, LLC, f/k/a POWDR – WOODWARD PA, LLC, et al., | |
| Defendants. | |

## MEMORANDUM OPINION

### MARCH 16, 2023

Plaintiff S.S. sues several corporate entities that operate an elite gymnastics camp in Woodward, Pennsylvania (the "Woodward Defendants"), and two employees of the camp: Defendant Nathaniel Singer, a former coach, and Defendant Brittany Shulman, the camp's administrator during the relevant time period. S.S.'s claims arise from allegations that Singer initiated an inappropriate sexual relationship with her while she was a junior counselor at the camp during the summer of 2016.

Defendants now move to dismiss S.S.'s Complaint because her claims are time-barred. S.S. seeks to avail herself of an exception to the statute of limitations contained in Pennsylvania's Minority Tolling Statute. That exception extends the statute of limitations on certain claims of childhood sexual abuse. However, the

Court concludes that S.S.'s fails to plausibly allege the facts necessary to apply the exception. It therefore grants Defendants' motions and dismisses S.S.'s Complaint without prejudice.

## I.   BACKGROUND

### A.   Underlying Facts

The Woodward Defendants operate an elite gymnastics camp in Woodward, Pennsylvania.[1] Shulman served as the camp's administrator.[2] Singer began working at the camp in the summer of 2016.[3] He was twenty.[4] That same summer, seventeen-year-old S.S. was a junior counselor at the camp.[5] Singer served as S.S.'s "head coach" for two weeks and generally as her coach for the rest of the summer.[6] S.S. alleges that "Singer engaged in a pattern of grooming behavior" throughout the summer.[7] For instance, he would "leave his hands on S.S.'s body longer" than other coaches would during gymnastics exercises.[8]

Singer spent a great deal of his time with female campers.[9] His behavior persisted even after being reprimanded for violating camp rules by being with campers alone.[10] He began to contact S.S. via Snapchat, an application for sending

---

[1]   Compl., Doc. 1 ¶ 18.
[2]   *Id.* ¶ 11.
[3]   *Id.* ¶ 21.
[4]   *Id.* ¶ 27.
[5]   *Id.* ¶ 25.
[6]   *Id.*
[7]   *Id.* ¶ 28.
[8]   *Id.* ¶ 29.
[9]   *See id.* ¶¶ 30-32.
[10]   *Id.* ¶ 32.

photos.[11] On occasion, he sent "partially nude" photos of himself.[12] S.S. never requested photos from Singer.[13] On the penultimate night of S.S.'s stay at the camp, Singer "pressured [her] to sneak out of her bunk" at three o'clock in the morning and then had "inappropriate sexual contact" with her on the campgrounds.[14] Singer "openly" pursued an "intimate relationship" with S.S.[15]

The Woodward Defendants rehired Singer in the summer of 2017.[16] That year, another staff member reported Singer to camp administrators, including Shulman, for his relationship with S.S.[17] Singer admitted to Shulman that he had sexual contact with S.S.[18] Despite Shulman's knowledge of Singer's conduct, she rehired him to work at the camp in 2017, 2018, and 2019 until he was suspended from coaching gymnastics in 2020.[19]

## B.    Procedural History

S.S. filed a Complaint alleging several negligence claims against the Woodward Defendants and Shulman[20]; assault and battery claims against Singer[21]; and claims that the Woodward Defendants are vicariously liable for Singer and

---

[11]  *Id.* ¶ 33.
[12]  *Id.*
[13]  *Id.* ¶ 34.
[14]  *Id.* ¶¶ 37-38.
[15]  *Id.* ¶ 40.
[16]  *Id.* ¶ 41.
[17]  *Id.* ¶ 42.
[18]  *Id.* ¶ 43.
[19]  *See id.* ¶¶ 45-57.
[20]  *Id.* ¶¶ 63 (Count I: common-law negligence), 65-76 (Count II: negligent supervision), 78-82 (Count III: negligent hiring and retention).
[21]  *Id.* ¶¶ 79-81 (Count V).

Shulman's actions[22]. All of her claims arise out of Singer's conduct in the summer of 2016. The Woodward Defendants and Shulman both separately move to dismiss S.S.'s Complaint.[23] Their motions have been fully briefed and are ripe for disposition.

## II.   LAW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the Supreme Court of the United States' landmark decisions *Bell Atlantic Corp. v. Twombly*[24] and *Ashcroft v. Iqbal*,[25] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[26]

The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3)

---

[22]   *Id.* ¶¶ 70-78 (Count IV).
[23]   Shulman MTD, Doc. 13; Woodward MTD, Doc. 14.
[24]   550 U.S. 544 (2007).
[25]   556 U.S. 662 (2009).
[26]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

"assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[27]

## III.    ANALYSIS

Defendants first argue that S.S.'s claims are time-barred.[28] The parties appear to agree that the applicable statute of limitations is two years under 42 Pa. C.S. § 5524. Under section 5533(b)(1)(i) of Pennsylvania's Minority Tolling Statute, when the injured plaintiff is an unemancipated minor, the statute of limitations does not begin to run until the minor turns eighteen. All of S.S.'s claims arise out of Singer's conduct in 2016, when she was seventeen years old. Therefore, although it is unclear when S.S. turned eighteen, the limitations period for S.S.'s claims expired long before she filed this Complaint in September 2022.[29]

S.S. seeks to apply the Pennsylvania Minority Tolling Statute's exception for civil actions "arising from childhood sexual abuse" contained in 42 Pa. C.S. § 5533(b)(2)(i). That exception would extend the limitations period on S.S.'s claims to twelve years after she turns eighteen.[30] "Childhood sexual abuse" includes any

---

[27]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[28]   Shulman MTD Br., Doc. 13 at 6-9; Woodward MTD Br., Doc. 14 at 7-10.

[29]   Compl., Doc. 1 at 19 (filed Sept. 8, 2022).

[30]   Pennsylvania amended the Minority Tolling Statute through Act 87 of 2019, P.L. 641 No. 87, which further extended the statute of limitations for sexual abuse claims to thirty-seven years and made other substantive changes not relevant here. But the amendment did not apply retroactively to revive claims that expired before November 26, 2019. *See id.* § 10. If S.S. was seventeen in the summer of 2016, her claims would have expired before November 2019. Therefore, the 2002 version of the Minority Tolling Act applies to her claims, but the difference between the two versions is functionally immaterial to this case.

sexual contact that the minor engaged in as a result of "forcible compulsion or by threat of forcible compulsion which would prevent resistance by a person of reasonable resolution."[31] "Forcible compulsion" is "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied."[32]

Defendants argue that S.S.'s complaint fails to plausibly allege that Singer's conduct involved forcible compulsion or the threat thereof.[33] S.S. responds that she has pled facts plausibly alleging "that she was compelled to engage in indecent contact with her gymnastics coach while at overnight gymnastics camp, where he enjoyed a position of authority over her."[34] The Court first discusses how Pennsylvania courts have interpreted the forcible-compulsion element and then discusses whether the Complaint sufficiently alleges facts to satisfy it.

### A.   The Forcible-Compulsion Requirement in Pennsylvania Sexual Assault Law

The term "forcible compulsion" in the context of sexual assaults has been the subject of several appellate decisions in the Pennsylvania courts. The statutory definition in section 3101 was intended as a codification of the existing common law.[35] That definition derives from *Commonwealth v. Rhodes*, in which the Supreme

---

[31]   42 Pa. C.S. § 5533(b)(2)(ii).
[32]   18 Pa. C.S. § 3101
[33]   Shulman MTD Br., Doc. 13 at 6-9; Woodward MTD Br., Doc. 14 at 7-10.
[34]   S.S. Opp. Br., Doc. 16 at 7.
[35]   *See* 42 Pa. C.S. § 5533 (2002) (Bar Assoc. cmt.)

Court of Pennsylvania provided a nonexclusive list of factors to guide the forcible compulsion determination:

> [the] respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress.[36]

In *Rhodes*, the Supreme Court found "it sufficient to demonstrate beyond a reasonable doubt that [the defendant] engaged in sexual intercourse with his eight year old victim by forcible compulsion and by the threat of forcible compulsion."[37] The *Rhodes* court noted that the defendant had been familiar with the victim for three years before the assault and explained that there is an "inherent" element of forcible compulsion when a an adult instructs "a child who is younger, smaller, less psychologically and emotionally mature" to perform or submit to sexual acts.[38] That is especially true "where the child knows and trusts the adult."[39] "In such cases, forcible compulsion or the threat of forcible compulsion derives from the respective capacities of the child and the adult sufficient to induce the child to submit to the wishes of the adult ('prevent resistance'), without the use of physical force or violence or the explicit threat of physical force or violence."[40]

---

[36]   510 A.2d 1217, 1226 (1986).
[37]   *Id.*
[38]   *Id.*
[39]   *Id.*
[40]   *Id.*

An application of the *Rhodes* factors can be found in *Chancellor v. Pottsgrove School District*, where the Honorable Eduardo C. Robreno of the United States District Court for the Eastern District of Pennsylvania withheld summary judgment in favor of the defendants because the record contained disputed facts as to whether the defendant, a band teacher, used forcible compulsion during a ten-month sexual relationship with one of his students.[41] The circumstances present in *Chancellor* included: a twelve-year difference in ages between the victim and defendant; the defendant's "position of authority" over the victim as her band teacher; and the fact that many of the sexual acts occurred at the school or at band functions, where the defendant "exerted" custodial control over the victim.[42] Based on those circumstances, Judge Robreno concluded that there was "a reasonable issue of material fact as to whether [the] [p]laintiff was 'compelled,' by virtue of intellectual, moral, emotional, or psychological force, to submit to the sexual relationship."[43]

In *Commonwealth v. Titus*, the Superior Court of Pennsylvania confronted a defendant's challenge to his conviction for sexually abusing his daughter shortly after the daughter came to live with him.[44] The defendant's daughter testified that she only began to push him "away *after* intercourse had occurred."[45] That led the *Titus* court to conclude that the defendant "did not use actual physical force, or the

---

[41]   501 F. Supp. 2d 695 (E.D. Pa. 2007).
[42]   *Id.* at 712.
[43]   *Id.* at 713.
[44]   556 A.2d 425, 426 (Pa. Super. 1989).
[45]   *Id.* at 427 (emphasis in original).

threat thereof, against the victim."[46] Without the threat of physical force, the only remaining basis to uphold the defendant's conviction was the father-daughter relationship between the defendant and the victim.[47]

In addressing whether a special relationship between the defendant and the victim was sufficient to infer forcible compulsion, the *Titus* court reviewed several appellate decisions discussing the forcible-compulsion requirement, finding in each some aggravating circumstance beyond the relationship between the attacker and the victim.[48] That consistent pattern led the court to conclude that "neither *Rhodes* nor its progeny holds that the mere fact of a parent/child relationship, without more, establishes the existence of 'moral, psychological or intellectual force' sufficient to sustain a conviction of rape."[49] The *Titus* court therefore concluded that forcible compulsion could not be inferred from the relationship between the defendant and the victim because the victim had been living with her father for only one month and the record did not contain further evidence of the nature of their relationship.[50]

---

[46] *Id.*

[47] *See id.*

[48] *See id.* at 427-29 (citing *Commonwealth v. Stambaugh*, 512 A.2d 1216 (Pa. Super. 1986) (defendant's role as victim's stepfather and past physical abuse of victim); *Commonwealth v. Berry*, 513 A.2d 410 (Pa. Super. 1986) (victim testified she did not protest defendant's acts because she feared physical abuse based on defendant's history of abusing her); *Commonwealth v. Gabrielson*, 536 A.2d 401 (Pa. Super. 1988) (adult victim was taken to an isolated wooded area and threatened with physical violence)).

[49] *Id.* at 429.

[50] *Id.* at 430.

### B.    S.S. Fails To Plausibly Allege Either Express or Implicit Forcible Compulsion

Here, the facts alleged in S.S.'s Complaint do not bear the weight of her assertion that she was "compelled to engage in indecent contact."[51] S.S. alleges that Singer "pressured [her] to sneak out of her bunk."[52] At this stage, an allegation that an individual "pressured" a minor into engaging in sexual conduct is likely sufficient to constitute "forcible compulsion." But that is not what S.S. alleges. She alleges that Singer pressured her to sneak out of her bunk, not engage in sexual activity. She does not otherwise allege that she was under any kind of duress as a result of Singer's actions.[53] Therefore, S.S. fails to plausibly allege express forcible compulsion.

As for implied forcible compulsion from S.S.'s relationship with Singer, the Court agrees with her that Singer was in a position of authority over her, as the "head coach" to a "junior counselor."[54] The Court finds that relationship similar to the teacher-student relationship Judge Robreno considered in *Chancellor*. But there are important differences. S.S. and Singer's relationship appears to be a more professional one than the teacher-student relationship at issue in *Chancellor* and the

---

[51]  S.S. Opp. Br., Doc. 16 at 7.

[52]  Compl., Doc. 1 ¶ 37.

[53]  Although the Complaint does not suggest that S.S. consented to sexual activity, her consent would weigh against a finding of forcible compulsion. *See Commonwealth v. Eckrote*, 12 A.3d 383, 387 (Pa. Super. 2010) ("It is well-established that in order to prove the 'forcible compulsion' component, the Commonwealth must establish, beyond a reasonable doubt, that the defendant 'used either physical force, a threat of physical force, or psychological coercion, since the mere showing of a lack of consent does not support a conviction for rape . . . by forcible compulsion.'" (alterations in original) (quoting *Commonwealth v. Brown*, 727 A.2d 541, 544 (Pa. 1999))).

[54]  Compl., Doc. 1 at ¶¶ 25-27.

parent-child relationship at issue in *Titus*. The age gap between Singer and S.S. is only three years.[55] Additionally, it appears that Singer coached S.S. for one summer and there are no allegations that they knew each other before that summer. The length of that relationship falls closer to the one-month stepparent-child relationship found insufficient in *Titus* than the substantially longer relationship between the student and teacher in *Chancellor*.[56]

Those differences serve to distinguish this matter from *Chancellor*. The only fact that affirmatively weighs towards a conclusion that Singer's actions constitute forcible compulsion is that the sexual acts occurred on the campground, which the Court finds similar to the school setting in *Chancellor*.[57] All that is left is the coach-counselor or coach-student relationship. As *Titus* and its progeny make clear, there must be some additional factor beyond the relationship to constitute implied forcible compulsion.[58] The Court finds the one encounter between Singer and S.S. that occurred at the campground is insufficient. Therefore, S.S.'s Complaint fails to sufficiently allege implied forcible compulsion.

---

[55] *See id.* ¶¶ 26, 27.

[56] It is unclear how long the teacher-student relationship in *Chancellor* was. There, the defendant-teacher and student had a sexual relationship that lasted about ten months, but presumably knew each other for a longer period of time given their common involvement in the school band. *See Chancellor*, 501 F. Supp. 2d at 698.

[57] *Id.* ¶ 38.

[58] *See Commonwealth v. Lattimer*, 2014 WL 10803058, at *4-5 (Pa. Super. Aug 1, 2014) ("[I]n many cases where a familial relationship exists between the perpetrator, the courts rely on additional factors to support a finding of forcible compulsion." (citing *Commonwealth v. Ables*, 590 A.2d 334, 338 (Pa. Super. 1991); *Commonwealth v. Ruppert*, 579 A.2d 966, 969 (Pa. Super. 1990))).

## IV.   CONCLUSION

S.S's allegations show only that Singer pressured her to leave her bunk. That may have been a violation of camp rules, but it does not indicate that Singer compelled her to engage in sexual conduct. Nor has she alleged a relationship from which the Court can infer implied forcible compulsion. Therefore, the Court concludes that S.S. fails to plausibly allege the facts necessary to extend the statute of limitations on her claims.[59] But the Court will dismiss S.S.'s Complaint without prejudice, as amendment may cure its deficiencies.

An appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[59] The Court recognizes that that the plaintiffs in *Titus* and every case cited to above had the benefit of at least discovery and sometimes, a trial record. It does not expect S.S. to have such detailed allegations at the pleading stage. But her allegations must hew to the governing law.