## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| S.S., | No. 4:22-CV-01407 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| WOODWARD PENNSYLVANIA, LLC, f/k/a POWDR – WOODWARD PA, LLC, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### JULY 20, 2023

Plaintiff S.S. sues several corporate entities that operate a gymnastics camp she attended as a minor (collectively, "Woodward"). She also sues two of the camp's employees: Brittany Shulman, the camp's administrator during the relevant time period, and Nathaniel Singer, her former gymnastics coach. S.S.'s claims arise from allegations that Singer initiated an inappropriate relationship with her while she was a junior counselor at the camp during the summer of 2016. Woodward and Shulman separately move to dismiss S.S.'s First Amended Complaint ("FAC"). For the following reasons, the Court grants their motions in part.

# I.    BACKGROUND

## A.    Underlying Facts

Woodward operates an elite gymnastics camp for adolescent and young adult gymnasts in Woodward, Pennsylvania.[1] Shulman served as the camp's administrator.[2] Woodward employed Singer for the summer of 2016.[3] He was twenty years old.[4] When Singer was hired for the 2016 season, Woodward was aware that he previously engaged in "an inappropriate sexual relationship that included indecent contact with a minor female gymnast and Woodward Camper whom he coached."[5] Shulman was also aware of the pre-2016 incident.[6]

In the summer of 2016, seventeen-year-old S.S. attended the camp as both a camper and a junior counselor.[7] Singer served as S.S.'s "head coach" for two weeks and generally as her coach for the rest of the summer.[8] Singer spent a great deal of his time with minor female campers like S.S.[9] At one point, he was reprimanded for violating camp rules by being with campers alone, but he continued to do so.[10]

---

[1]  FAC, Doc. 22 ¶¶ 4-7.
[2]  *Id.* ¶ 11.
[3]  *Id.* ¶ 25
[4]  *Id.* ¶ 36.
[5]  *Id.* ¶¶ 27-28.
[6]  *Id.* ¶ 30.
[7]  *Id.* ¶¶ 33, 35.
[8]  *Id.* ¶ 36.
[9]  *See id.* ¶¶ 47-48.
[10] *Id.* ¶ 48.

During training exercises, he would "leave his hands on S.S.'s body longer" than other coaches would.[11] He began to contact S.S. via Snapchat, an application for sending photos.[12] Although S.S. didn't request them, Singer occasionally sent "partially nude" photos of himself to S.S.[13]

 On the penultimate night of S.S.'s stay at the camp in 2016, Singer "pressured [her] to sneak out of her bunk" at three o'clock in the morning to "watch the stars" on a secluded part of the campgrounds.[14] Singer invited S.S. at a time at which he knew that other camp employees would not be keeping watch.[15] While lying on the ground next to S.S., Singer, who was larger and stronger than S.S., "physically pulled" her towards him and began kissing her, then "forced his way on top of her and had inappropriate sexual contact with her without her consent."[16] S.S. felt pressured to participate in the acts due to the age difference between her and Singer, the disparity in size between the two, and Singer's position of authority over her.[17] "[O]ther minor campers and staff" became aware of Singer's behavior.[18]

In 2017, the Woodward and Shulman rehired Singer for the summer.[19] During the 2017 season, another Woodward employee reported Singer's relationship and

---

[11]  *Id.* ¶ 44.
[12]  *Id.* ¶ 50.
[13]  *Id.* ¶¶ 50-51
[14]  *Id.* ¶¶ 54, 56.
[15]  *Id.* ¶ 55.
[16]  *Id.* ¶¶ 57-58.
[17]  *Id.* ¶ 62.
[18]  *Id.*
[19]  *Id.* ¶ 65.

another incident with a different minor camper to Shulman.[20] Singer admitted to Shulman that he had sexual contact with S.S. during the 2016 season while S.S. was still a minor.[21]

Despite that, Woodward and Shulman rehired Singer to work at the camp in 2018 and 2019 until he was suspended from coaching gymnastics in 2020 by "USA Gymnastics and/or the U.S. Center for Safesport" based on a complaint from a third party.[22] At no point did Shulman or Woodward report Singer's conduct to the authorities.[23]

## B.   Procedural History

S.S.'s FAC alleges five causes of action. She sues Woodward and Shulman for negligence (Count I), negligent supervision (Count II), and negligent hiring and retention (Count III).[24] She sues Singer for assault and battery (Count V).[25] She also sues Woodward for its vicarious liability for the actions of several Woodward employees, including Shulman and Singer (Count IV).[26] Woodward and Shulman separately move to dismiss the claims against them in the FAC.[27] Their motions have been fully briefed and are ripe for disposition.

---

[20]   *Id.* ¶¶ 66, 68.
[21]   *Id.* ¶ 67.
[22]   *See id.* ¶¶ 70-79.
[23]   *Id.* ¶ 81.
[24]   *Id.* ¶¶ 87 (Count I), 89-100 (Count II), 102-06 (Count III).
[25]   *Id.* ¶¶ 80-81.
[26]   *Id.* ¶¶ 70-78.
[27]   Shulman MTD, Doc. 25; Woodward MTD, Doc. 26.

## II.   LAW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the Supreme Court of the United States' landmark decisions *Bell Atlantic Corp. v. Twombly*[28] and *Ashcroft v. Iqbal*,[29] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[30]

The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[31]

---

[28]   550 U.S. 544 (2007).
[29]   556 U.S. 662 (2009).
[30]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[31]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

## III.    ANALYSIS

### A.    Whether the Court May Consider the SafeSport Transcript as a Document Integral to S.S.'s Claims

Before addressing the merits of Defendants' arguments, the Court discusses one procedural issue: whether it can consider a transcript of an interview of S.S. from the SafeSport investigation referenced in the FAC.[32] Defendants contend that the FAC's reference to the SafeSport investigation entitles the Court to consider the transcript as part of the record for their motions to dismiss.[33] S.S. responds that although the FAC references the investigation, her claims aren't based on the transcript and the Court therefore shouldn't consider it at this stage.[34]

It's settled law that while reviewing a motion to dismiss a complaint for failure to state a claim, a court may consider a document that is "integral to or explicitly relied upon in the complaint."[35] The critical question "is whether the claims in the complaint are based" on the document rather than whether the complaint cites to or references the document.[36]

The FAC references the SafeSport investigation as the straw that broke the camel's back of Singer's gymnastics coaching career.[37] It doesn't mention the

---

[32]    SafeSport Investigation Tr., Doc. 26-2.

[33]    Defendants argue that the transcript demonstrates that S.S. consented to the alleged indecent contact with Singer and that inconsistencies exist between S.S.'s statements in the transcript and the facts alleged in her FAC. Shulman MTD Br., Doc. 27 at 10-12; Woodward MTD Br., Doc. 26 at 11-12.

[34]    Opp. to Woodward MTD, Doc. 31 at 8.

[35]    *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[36]    *Id.*

[37]    FAC, Doc. 22 ¶ 79.

transcript at all. But even if it did, the Court cannot conclude that the transcript is integral to S.S.'s claims. The reference to the investigation (and by extension, the transcript) is oblique at best.[38] Therefore, the Court declines to consider the transcript at this stage of the proceedings.

### B.    Whether S.S.'s Claims Fit Into the Minority Tolling Statute's Exception to the Two-Year Statute of Limitations

Defendants next argue that S.S.'s claims are time-barred under the applicable two-year statute of limitations, which expired in long before S.S. filed her original complaint in September 2022.[39] S.S. responds that Pennsylvania's Minority Tolling Statute, 42 Pa. C.S. § 5533 extends the statute of limitations on her claims.[40]

Under Section 5533(b)(1)(i), when an injured plaintiff is an unemancipated minor, the statute of limitations doesn't start to run until the minor-plaintiff turns eighteen.[41] Section 5533(b)(2)(i) extends the statute of limitations for civil actions

---

[38]  *See Mele v. Fed. Rsrv. Bank of New York*, 359 F.3d 251, 256 (3d Cir. 2004) (holding that when an employee was terminated for violating his employer's personnel guide, that guide formed the "heart" of the complaint and could be considered at the motion to dismiss stage); *see also Perlmutter v. Russell Hobbs, Inc.*, 450 F. App'x 161, 163 (3d Cir. 2011) (holding that when examining a breach of contract claim, the court could consider the contract in question at the motion to dismiss stage).

[39]  Shulman MTD Br., Doc. 27 at 7-12; Woodward MTD Br., Doc. 26 at 5-12; 42 Pa. C.S. § 5524. All of S.S.'s claims relate to Singer's conduct in 2016, when S.S. was seventeen years old. FAC, Doc. 22 ¶¶ 43-63. Therefore, although it is unclear when S.S. turned eighteen, the limitations period for S.S.'s claims expired long before she filed her original complaint in September 2022. Compl., Doc. 1 at 19 (filed Sept. 8, 2022).

[40]  42 Pa. C.S. § 5524.

[41]  42 Pa. C.S. § 5533(b)(1)(i).

"arising from childhood sexual abuse" to twelve years after the minor-plaintiff turns eighteen.[42] Accordingly, if the statute applies to S.S.'s claims, they were timely filed.

Defendants argue that the Minority Tolling Statute doesn't apply to S.S.'s claims because they don't arise from "childhood sexual abuse" based on that term's definition.[43] To show that a claim arises from childhood sexual abuse, a plaintiff must show that the claim arises from "indecent contact" which must have occurred as a result of "forcible compulsion." Both of those terms have statutory definitions. Defendants argue that S.S.'s allegations do not satisfy either definition and that her claims are therefore untimely. The Court now turns to those definitions and Defendants' arguments.

### 1.   Indecent Contact

Woodward and Shulman first argue that the FAC's allegations are factually insufficient to plead that Singer engaged in indecent contact.[44] Indecent contact is "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person."[45] Defendants argue that kissing

---

[42]   Pennsylvania amended the Minority Tolling Statute through Act 87 of 2019, P.L. 641 No. 87, which further extended the statute of limitations for sexual abuse claims to thirty-seven years and made other substantive changes not relevant here. But the amendment did not apply retroactively to revive claims that expired before November 26, 2019. *See id.* § 10. If S.S. was seventeen in the summer of 2016, her claims would have expired before November 2019. Therefore, the 2002 version of the Minority Tolling Act applies to her claims, but the difference between the two versions is functionally immaterial to this case.

[43]   42 Pa. C.S. § 5533(b)(2)(ii).

[44]   Shulman MTD Br., Doc. 27 at 8-9; Woodward MTD Br., Doc. 26 at 7-8.

[45]   18 Pa. C.S. § 3101.

someone and getting on top of them does not constitute touching S.S.'s sexual or other intimate parts, as required by the statutory definition. The Court disagrees.

In *Commonwealth v. Capo*, the Superior Court of Pennsylvania considered a defendant's argument that he didn't engage in indecent contact when he kissed the victim's face and neck and rubbed her shoulders, back, and stomach over the victim's coat.[46] The defendant argued that his actions fell short of the statutory definition of "indecent contact" because he did not touch the victim's sexual parts or organs, an argument similar to the one Defendants advance here.[47] The *Capo* court roundly rejected the defendant's argument as a matter of statutory interpretation, explaining that defendant's interpretation of the statute would mean that whether an individual violated the statute would depend on whether they successfully attacked the victim, which the court found to be an absurd result.[48]

More recently, in *Commonwealth v. Gamby*, the Supreme Court of Pennsylvania held that an intimate body part is a "body part that is personal and private, and which the person ordinarily allows to be touched only by people with whom the person has a close personal relationship, and one which is commonly associated with sexual relations or intimacy," ultimately finding that the neck was an intimate body part for the purposes of indecent contact.[49]

---

[46]  *Commonwealth v. Capo,* 727 A.2d 1126, 1127 (Pa. Super. 1999).

[47]  *Id.*

[48]  *Id.*

[49]  *Commonwealth v. Gamby*, 283 A.3d 298, 313-314 (Pa. 2022); *accord Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006) (concluding that "the act of wrapping one's arms around

The decisions cited above undermine Defendants' argument. S.S.'s allegation that Singer kissed her and forced his way on top of her is sufficient for the Court to infer that he touched parts that an ordinary person would consider personal and private. Therefore, S.S. has plausibly alleged that Singer engaged in indecent contact.

### 2.    Forcible Compulsion

Defendants next challenge the FAC's allegations that Singer engaged in forcible compulsion when he made physical contact with S.S.[50] An actor forcibly compels another person to do something when they use "physical, intellectual, moral, emotional, or psychological force, either express or implied."[51]

In *Commonwealth v. Rhodes*, the Pennsylvania Supreme Court offered the following nonexhaustive factors to consider when determining whether an individual forcibly compelled another:

> [the] respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress.[52]

---

another person and inserting one's tongue into another's mouth clearly involves the touching of an intimate part of that person."); *Commonwealth v. Haahs*, 289 A.3d 100, 107 (Pa. Super. 2022) ("[I]f a person's neck falls under that definition as the *Gamby* [c]ourt held, it strains credulity not to also find that a person's lips and mouth constitute 'intimate parts' of the body for purposes of indecent assault.").

[50]   Shulman MTD Br., Doc. 27 at 8-9; Woodward MTD Br., Doc. 26 at 7-8.

[51]   18 Pa. C.S. § 3101.

[52]   *Commonwealth v. Rhodes*, 510 A.2d 1217, 1226 (Pa. 1986).

In its prior Memorandum Opinion, the Court concluded that S.S. failed to allege either express or implied forcible compulsion.[53] In the FAC, S.S. alleges that Singer, who was stronger and larger than S.S., "physically pulled her towards him and began kissing her" and then "forced his way on top of her."[54] At this early stage, an allegation that Singer's pulled S.S. towards him sufficiently alleges the use of physical force. When added to the power dynamic inherent in S.S. and Singer's coach-camper dynamic, the FAC's allegations adequately indicate Singer's use of physical force when he engaged in indecent contact. Accordingly, S.S. plausibly alleges that her claims against Defendants arise from childhood sexual abuse under Section 5533. Her claims are therefore timely.

### C.   Negligence Claims

Defendants first argument with respect to S.S.'s negligence claims is that Count I (negligence) is duplicative of Counts II (negligent supervision) and III (negligent hiring/retention).[55] In support, Defendants cite *Giannone v. Ayne Institute*, where the late Honorable Stewart R. Dalzell, writing for the Eastern District of Pennsylvania, explained that "Pennsylvania courts do not distinguish between general negligence and either negligent supervision or negligent child

---

[53]   March 16, 2023 Mem. Op., Doc 20, at 10-12 (concluding that S.S.'s allegations that Singer pressured her to sneak out of her cabin coupled with the coach/student relationship and setting on a campground were insufficient to suggest express or implied forcible compulsion).

[54]   FAC, Doc. 22 ¶¶ 57-58.

[55]   Shulman MTD Br., Doc. 27 at 20-21; Woodward MTD Br., Doc. 26 at 13.

abuse.[56] Judge Dalzell therefore dismissed the plaintiff's negligent child abuse and negligent supervision claims because they were duplicative of the plaintiff's general negligence claim.[57] S.S. largely fails to respond to Defendants' citation to *Giannone*. The Court accepts Defendants' argument, but rather than dismissing Count I as Defendants suggest, the Court will dismiss Counts II and III in line with *Giannone*. Negligent hiring and negligent supervision/retention are theories of liability for a negligence cause of action.

On the merits, Defendants argue that S.S. fails to state a claim for negligence because neither Woodward nor Shulman had reason to investigate Singer's background or monitor his contact with minors—a necessary element for Defendants' negligent hiring and negligent supervision theories.[58] S.S. carries the burden to plausibly allege that Defendants' had information that would give a reasonable person an indication that they should further investigate Singer's background or closely monitor his contact with female minors.[59] S.S. argues that she has satisfied this burden in two ways: (1) her allegations regarding Singer's pre-2016

---

[56] Shulman MTD Br., Doc. 27 at 20-21; Woodward MTD Br., Doc. 26 at 13; *Giannone v. Ayne Inst.*, 290 F. Supp. 2d 553, 566 (E.D. Pa. 2003).

[57] *Giannone*, 290 F. Supp. at 566.

[58] Woodward MTD Br., Doc. 26 at 16-19; Shulman MTD Br., Doc. 27 12-18.

[59] *See R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 698 (Pa. Super. Ct. 2000) (affirming summary judgment in favor of a church on negligent hiring, supervision, and retention claims where, during its background check, the church received no information "that would have given a reasonable person any hint that [the priest's] sexual propensities needed to be investigated further."); *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 488 (3d Cir. 2013) (explaining that one element of negligent supervision is that the "employer knows or has reason to know of the necessity and ability to control the employee"); *accord* Restatement (Second) of Torts § 317.

inappropriate sexual relationship with a minor female gymnast while working for Woodward and (2) Singer's numerous violations of camp policy.[60]

Singer's violations of camp policy do not involve conduct suggesting he would engage in sexual contact with a minor camper. But S.S.'s allegation that Woodward and Shulman were aware that Singer had an inappropriate sexual relationship with a minor camper prior to the summer of 2016 does involve conduct that would give Defendants reason to investigate Singer further.[61] Defendants argue that the FAC's reference to the pre-2016 incident is conclusory and should not be credited.[62]

The Court notes that the allegation is unspecific as to the exact nature of the conduct that occurred, exactly when it occurred, and how Defendants became aware of it. But Federal Rule of Civil Procedure 8 does not require that level of specificity at this stage.[63] With all inferences taken in favor of S.S., the Court concludes that the FAC plausibly alleges that Defendants were aware that Singer engaged in a sexual relationship with a minor camper prior to 2016. The Court further concludes that Defendants' knowledge gave them reason to know that they should further investigate Singer's background and monitor his conduct with minors. Accordingly, S.S. has adequately stated negligent hiring/retention and supervision claims.

---

[60] Opp. to Woodward MTD, Doc. 31 at 10.
[61] FAC, Doc. 22 ¶¶ 27-28, 30.
[62] Woodward MTD Br., Doc. 26 at 15; Shulman MTD Br., Doc. 27 at 15.
[63] Defendants are welcome to renew their argument if discovery shows that Woodward and its employees were not aware of Singer's pre-2016 misconduct.

### D.    Vicarious Liability

Woodward lastly argues that Count IV (vicarious liability), should be dismissed with prejudice because Singer's sexual contact with S.S. wasn't within the scope of his employment with Woodward.[64] Woodward cites to *Chinea v. Woodward*, where this Court considered a similar claim against Woodward arising out Singer's inappropriate contact with a different camper in 2018.[65] There, this Court held that Singer's actions, which included grabbing the plaintiff's buttocks and digitally penetrating her, did not serve Woodward's interests and were therefore outside the scope of his employment.[66] The Court acknowledged that some of Singer's sexual contact occurred during gymnastics training, which involves substantial physical contact between a coach and a gymnast.[67] Nevertheless, the Court concluded that acts that would be considered inappropriate contact between Singer and a camper did not fall within the scope of Singer's employment because the plaintiffs alleged that they were improper.[68] Physical contact may be unavoidable in gymnastics. But inappropriate physical contact is not.

The FAC's allegations regarding Singer's conduct during training are no different from the allegations the Court considered in *Chinea* and the result is

---

[64]   Woodward MTD Br., Doc. 26 at 19-23.
[65]   *Chinea v. Woodward Pennsylvania, LLC*, 2022 WL 17627870 (M.D. Pa. Dec. 13, 2022); Woodward MTD Br., Doc. 26 at 19.
[66]   *Chinea*, 2022 WL 17627870 at *6.
[67]   *Id.*
[68]   *Id.*

accordingly the same: Singer's inappropriate contact during gymnastics training doesn't fall within the scope of his employment with Woodward because—as the FAC alleges—he acted inappropriately. Singer's additional sexual encounter with S.S. presents a clearer picture. There is no doubt that cajoling a minor camper to break camp rules and engage in inappropriate physical contact is not within the scope of a camp counselor's employment. Accordingly, Woodward isn't vicariously liable for Singer's conduct and Count IV will be dismissed with prejudice with respect to Singer's conduct.

Count IV also seeks to hold Woodward liable for Shulman's conduct. As expressed above, S.S. has plausibly alleged negligent hiring/retention and negligent supervision claims against Shulman. It's undisputed that Shulman's actions in hiring and supervising Singer were part of the scope of her employment with Woodward. Therefore, Count IV may proceed on that basis.[69]

---

[69] S.S. also identifies several additional Woodward employees and argues that Woodward is vicariously responsible for their conduct. *See* FAC, Doc. 22 ¶ 70. However, S.S. fails to identify any actionable conduct on the part of those employees. Accordingly, Count IV will be dismissed as to those employees as well.

## IV.   CONCLUSION

For the foregoing reasons, Woodward's motion is granted in part and denied

in part.

An appropriate Order follows.


BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge